# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT
2020 JAN 21 PM 2:52
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIV. DAYTON

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No.
CELLULAR TELEPHONE ASSIGNED )
CALL NUMBER (313) 587-8848 ) 3:20 mj 037
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This court has authority to issue this warrant under 18 U.S.C. sections 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the ____unknown____ District of ____unknown____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 and 846 | Conspiracy to possess with intent to distribute a controlled substance |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Ryan Fergot, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1-21-20

*Judge's signature*

City and state: Dayton, Ohio          Sharon L. Ovington, United States Magistrate Judge
                                       *Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A CELLULAR TELEPHONE ASSIGNED CALL NUMBER (313) 587-8848 | Case No. _____ <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Ryan M. Fergot, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of a cellular telephone assigned call number (313) 587-8848, which shows the phone registered to Steve Smith at 857 North Telegraph, Roseville, Michigan 48066 (hereinafter referred to as "**Target Telephone**"), whose service provider is T-Mobile, a wireless telephone service provider. The **Target Telephone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent with the United States Drug Enforcement Administration (DEA), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878. The information contained in this Affidavit is either personally known by me or relayed to me by other law enforcement officers involved in this investigation. I have been employed as a Special Agent with the DEA since September 2018. In September 2018, I attended the DEA Academy which consisted of 17 weeks of training in conducting federal drug trafficking investigations; handling confidential sources; conducting undercover operations; conducting mobile, static, foot and electronic surveillance; conducting tactical entry and vehicle

arrest operations; using defensive tactics and firearms; as well as additional aspects of conducting DEA lead investigations. I have been assigned to the DEA Dayton Resident Office since April 2019. Prior to employment with the DEA, I was a sworn Law Enforcement Officer of the State of Wisconsin who was charged with the duty to investigate criminal activity and enforce the criminal laws of the State of Wisconsin, and employed by the City of Appleton Police Department from August 2014 to September 2018. During my employment with the Appleton Police Department, I was assigned to the Department's patrol division. During my time as a patrol officer, I conducted retail level drug investigations and I assisted the Appleton Police Department's Community Resource Unit (CRU) which included Narcotics Investigations, Prostitution and Pimping, Human Trafficking, and Criminal Street Gangs.

3. Since the time of my assignment with the DEA, and during time spent as an Appleton Police Officer, I have been involved in narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics, and participated in undercover narcotics purchases. Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. These people usually attempt to conceal their identities, as well as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived.

4. Through training and experience, I am aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of standard hardline telephones, cellular telephones and digital display paging devices, or use of multiple telephones or other devices, to avoid detection by law enforcement.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter nor all the facts known to investigators.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 and 846 (possession with the intent to distribute and to distribute a controlled substance and conspiracy to commit the same); and 21 U.S.C. § 843(b) (use of a communications facility to commit a felony) have been committed, are being committed, and will be committed by an individual utilizing the **Target Telephone**. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

7. I submit, based on the facts below, that there is probable cause to believe that the **Target Telephone**, as described above, is being utilized by Corey SCHIFFMAN, who is a member of a Drug Trafficking Organization (DTO) that traffics large quantities of illegal marijuana, "hashish" and other items containing Delta-9-Tetrahydrocannabinol (THC), operating from the Pontiac, Michigan area.

8. Based on my training and experience, I know that marijuana is currently illegal for recreational use in Ohio. However, I know that some cities have passed local decriminalization reforms. Medical marijuana in Ohio was legalized in 2016 through legislation, but the first medical dispensary certificate of operation was not granted to a business until December 2018.[1]

9. On January 24, 2019, Warren County Drug Task Force (WCDTF) conducted a search warrant in Loveland, Ohio. During the search warrant, numerous THC edibles and other items were found with the label of "Detroit Growers Extracts" on the packaging. These edibles

---

[1] The Ohio Medical Marijuana Control Program website at https://www.medicalmarijuana.ohio.gov/News?archive=12_2018.

were subsequently tested and were determined to contain THC. WCDTF investigators were able to cultivate two (2) confidential informants (hereinafter referred to as CI's) from this search warrant, hereinafter referred to as CI 345 and CI 332.[2]

10. During separate interviews on January 24, 2019, CI 345 stated s/he drove to Michigan to purchase marijuana and other THC products. CI 345 stated s/he would purchase 140 ounces of THC items in Michigan and drive the THC products back to Ohio.

11. During a separate interview, on January 24, 2019, CI 332 stated that s/he would drive to Michigan and purchase marijuana and THC products to bring back to Ohio. CI 332 stated s/he would meet the owner of Detroit Growers and purchase marijuana. CI 332 stated s/he did not need a medical card to purchase marijuana, "hashish" and other THC products from Detroit Growers.

12. On a later date, both CI 345 and CI 332 identified a photo of SCHIFFMAN as the owner of Detroit Growers/Detroit Growers Extracts and the person from whom they would buy marijuana, "hashish" and other THC products.

13. On approximately June 24, 2019, DEA investigators served a Grand Jury Subpoena on Licensing and Regulatory Affairs (LARA), who is the licensing authority for the sale, transport and cultivation of marijuana in the State of Michigan. The Grand Jury Subpoena sought information to determine whether SCHIFFMAN, Katrina Knight, Detroit Growers, Detroit Growers Extracts, or 28 North Saginaw Street, Pontiac, Michigan were licensed in the State of Michigan. On approximately July 2, 2019, DEA investigators were informed that none of the requested parties (SCHIFFMAN, Katrina Knight, Detroit Growers, Detroit Growers Extracts, or 28 North Saginaw Street, Pontiac, Michigan) had applied for a license, had a license

---

[2] It should be noted that both CI 345 and CI 332 have previously been arrested for drug possession and trafficking offenses. Both CI's are currently working with law enforcement for consideration on current charges. During the period of time working with law enforcement, both CI's incurred additional drug-related charges.

pending, had been approved or been declined for the following to include, but not limited to, Grower, Processor, Secure Transporter, Provisioning Center, Safety Compliance Facility, etc.) under the Medical Marihuana Facilities Licensing Act, MCL.

14. On September 5, 2019, at approximately 4:50 pm, CI 345 and CI 332 entered the front door of the building of 28 North Saginaw Street, Pontiac, Michigan for the purpose of conducting the controlled purchase. The CI's were carrying $1,000 in prerecorded buy fund money, which had been provided to them by law enforcement. Consistent with the CI's explanation on prior purchases, the CI's could only gain access to 28 North Saginaw Street, Pontiac, Michigan through a stairwell as the elevators, but were locked down and inaccessible for customer use. As the CI's were walking up the stairs, they observed security cameras in the stairwell on both the 12th and 13th floors of the building. CI 332 and CI 345 were not aware of any other cameras on any of the other floors in the stairwell of the building of 28 North Saginaw Street, Pontiac, Michigan. Once the CI's arrived at the 13th floor, they exited the stairwell and turned right out of the stairwell. The CI's then knocked on the first door on the left side of the hallway, which is white in color. When the two CI's entered the room, they observed a large flat screen television showing multiple, smaller security camera screens. These security camera screens showed an elevator bank on the 13th floor, a camera view that looked down the front (Westside) of the building, and a camera view that looked down the East Lawrence Street side (Northside) of the building. [3]

15. Once inside Target Location 1, CI 345 and CI 332 made contact with a white male that was known to them as "Randy," later to be identified as Randall Vickery ("Vickery"). During the meeting, the CI's told Vickery that they had $1,000.00 to spend. Vickery told the CI's that they owed $770.00 on their current order, which was already prepared and waiting in in

---

[3] The transaction on September 5, 2019 was both audio and video recorded.

the lobby room on the 13th floor. Vickery and the CI's agreed upon additional items for the purchase, which when combined would total $1,000.00. Once the additional items were agreed upon, Vickery left lobby room on the 13th floor. After a short period of time, Vickery returned to the lobby room on the 13th floor and gave the CI's the additional items that completed their $1000.00 order. After receiving their order, the CI's left 28 North Saginaw Street, Pontiac, Michigan, and met with DEA Dayton and WCDTF Investigators at an arranged location where the CI's were debriefed.

16. During the debriefing of the CI's, WCDTF Detective Dan Schweitzer took custody of the items that the CI's had purchased from Vickery on behalf of SCHIFFMAN. The purchased items had been given to the CI's in black plastic shopping bags. The purchased items turned over to WCDTF included 12 glass jars of suspected marijuana, four (4) suspected marijuana "blunts" in plastic tubes, 14 jars of suspected "THC wax", and 20 black packages of edibles. Each individual item had the label of "Detroit Growers Extracts" on the packaging.

17. The 12 jars of suspected marijuana and the four (4) suspected marijuana "blunts" that from the controlled purchase on September 5, 2019 were sent to the Miami Valley Regional Crime Laboratory for testing. Laboratory test results showed the items tested positive for Delta-9-Tetrahydrocannabinol. The edible items that were seized have not yet been tested.

18. Based on information obtained from the CI's and in reviewing Instagram posts that the CI's have shared with law enforcement, it is believed that SCHIFFMAN utilizes the Instagram profile detroitgrowers_ and dgemembersonly and that these Instagram profiles are controlled by him.

19. In December of 2019, I applied for and was granted a search warrant for both of Corey SCHIFFMAN's Instagram profiles. Instagram records obtained covered the time period of January 1, 2019 through December 3, 2019. During analysis of the Instagram records, I observed the **Target Telephone** number listed as the phone number for the dgemembersonly

profile; the Instagram profile detroitgrowers_ has a separate phone number registered to it.

20. During an analysis of the Instagram records for dgemembersonly, it appears that SCHIFFMAN is utilizing this Instagram account. Based on a review of the communications and images, I observed multiple pictures of what appeared to be marijuana flowers that were packaged in jars labeled Detroit Growers Extracts; pictures of stacks of United States Currency; and, pictures showing the various rooms in the Detroit Growers storefront where marijuana was rolled and jarred prior to sale as well as the kitchen area where the edibales were manufacutered. There were numerous conversations between SCHIFFMAN, his employees, and those seeking his products related to the manufacture and distribution of marijuana and other "hashish" products located throughout the Instagram returns.

21. In summary, I believe the **Target Telephone** is currently being used by Corey SCHIFFMAN in furtherance of the conspiracy to possess with the intent to distribute and to distribute marijuana.

22. The focus of the phone ping would be to track Corey SCHIFFMAN as he travels across the United States and identify locations involved in his drug trafficking organization in the Pontiac, Michigan area.

23. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna

towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

24. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the **Target Telephone**, including by initiating a signal to determine the location of the **Target Telephone** on Sprint's network or with such other reference points as may be reasonably available.

25. Based on my training and experience, I know that T-Mobile can collect cell-site data about the **Target Telephone**.

## AUTHORIZATION REQUEST

26. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

27. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Telephone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the

proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2)

28. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Telephone** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

29. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephone** outside of daytime hours.

30. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents

because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Ryan Fergot
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 21st day of January, 2020.

_____
SHARON L. OVINGTON
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. A cellular telephone assigned call number, (313) 587-8848, with subscriber listed as Steve Smith, 857 North Telegraph, Roseville, Michigan 48066 ("**Target Telephone**"), whose wireless service provider is T-Mobile, a company headquartered at Bellevue, WA.

2. Information about the location of the **Target Telephone** that is within the possession, custody, or control of T-Mobile, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the **Target Telephone** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Telephone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Telephone** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).